Opinion filed May 13, 2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00155-CV 

                                                    __________

 

                          IN
THE MATTER OF M.R., A JUVENILE



 

                           On
Appeal from the Midland County Court at Law

 

                                                          Midland
County, Texas

 

                                                       Trial
Court Cause No. 5801

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The jury found M.R. guilty of possession of a controlled substance, and
the trial court sentenced him to confinement in the Texas Youth Commission.  We
affirm.

I. Background
Facts

            M.R.,
on his first day back from DAEP[1]
placement, was required to report to Midland High School Assistant Principal
Hector Herrera.  Officer Scott Casbeer was already in Principal Herrera’s
office for an unrelated matter when M.R. arrived.  Officer Casbeer noticed a can
outline in M.R.’s jean pocket and inquired about its contents on suspicion that
M.R. had snuff.   M.R. handed Officer Casbeer the can.  He opened it and saw
six zipper storage bags of white powder.  Officer Casbeer left Principal
Herrera’s office to field test the white powder.  Principal Herrera
questioned M.R. in the officer’s absence, and M.R. admitted that he sometimes
used and sold cocaine.  The powder tested positive for cocaine, and M.R. was
arrested.

II. Issues

            M.R.
challenges the trial court’s judgment with five issues.  He argues that the
trial court improperly rehabilitated two jurors who should have been struck for
cause, that it erroneously denied his motion for a continuance, that it
improperly reversed a prior suppression ruling, that it abused its discretion
by not sentencing M.R. with a less restrictive placement, and that the judgment
is based upon legally and factually insufficient evidence.

III.
Challenged Jurors

M.R.
contends that the trial court erred by rehabilitating Jurors Three and Five after
he challenged them for cause.  He argues that this error caused him harm
because he had to use peremptory challenges on them that he would have otherwise
used on two veniremembers who were seated on the jury.

When
a potential juror reveals a bias that is established as a matter of law, he
must be excused when challenged.  Anderson v. State, 633 S.W.2d 851, 854
(Tex. Crim. App. 1982).  When a potential juror reveals a potential bias, the trial court has the discretion to determine whether any
bias or prejudice exists to such an extent as to disqualify the juror from
service.  Nance v. State, 807 S.W.2d 855, 866 (Tex. App.—Corpus
Christi 1991, pet. ref’d).  The trial court’s ruling
on a challenge for cause will not be disturbed absent an abuse of discretion.  Vaughn
v. State, 833 S.W.2d 180, 184 (Tex. App.—Dallas 1992, pet. ref’d).

There
are two categories of bias that can rise to the level of a challenge for cause:
 bias or prejudice against the law and bias or prejudice for or against a
party.  M.R. correctly notes that, when a prospective
juror expresses a bias or prejudice in favor of or against the defendant, it is
ordinarily impossible for the juror to be qualified by simply stating that this
bias or prejudice can be set aside.  See Smith v. State,
907 S.W.2d 522, 530 (Tex. Crim. App. 1995).  However,
neither prospective juror expressed any bias against M.R.  Both expressed
concern about drugs in schools.  This presented a potential bias or prejudice
against the law.

The
test for challenges based upon a bias or prejudice against the law is whether
it would substantially impair the prospective juror’s ability to carry out the
oath and instructions in accordance with the law.  Hughes v. State, 878
S.W.2d 142, 148 (Tex. Crim. App. 1992).  But before a veniremember can be
excused for cause, the law must first be explained to them, and they must
respond whether they can set aside their personal views and follow the law as
explained.  Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App.
2002).  Counsel challenging for cause has the burden to prove that the
veniremember understood the law but could not overcome his bias and follow it. 
Id. at 747.

When
reviewing whether the trial court abused its discretion, appellate courts must
look to all the answers given by the veniremember.  Patrick v. State,
906 S.W.2d 481, 488 (Tex. Crim. App. 1995).  Even if a single statement or a
portion of the veniremember’s answers reflect a bias or prejudice and if the
answers as a whole reflect that the venireperson can follow the law and be fair
and impartial to the accused, the trial court retains discretion to overrule a
challenge for cause. Harris v. State, 784 S.W.2d 5, 22-23 (Tex. Crim.
App. 1989). When a veniremember’s answers are contradictory, vacillating, or
unclear, greater deference is given to the trial court to resolve the dispute. 
King v. State, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000).  

A.
Juror Five.

During
voir dire, a veniremember stated that she could not set aside her reaction to
an accusation that M.R. was selling drugs in school and that she could not
affirm her ability to be impartial.  M.R.’s counsel asked the venire panel who
agreed with this statement, and Juror Five and four others raised their hands. 
On a follow-up question, Juror Five could not guarantee with 100% certainty
that he could look at the case solely based upon the evidence.  Juror Five
explained that his concerns were the possibilities that he could feel M.R. was
guilty but the evidence was insufficient to convict and that M.R. could return
to school and sell drugs to his child.

The
trial court spoke to each challenged veniremember separately following the
close of the defense’s voir dire examination.  The trial court explained to Juror
Five that jurors were required to listen to the testimony and then decide if
the State proved its case beyond a reasonable doubt.  Juror Five responded that
he could do that.  The trial court also asked Juror Five about his
response to the defense counsel’s earlier question.  Juror Five explained that
he had interpreted defense counsel’s question as asking if he could live with
the situation where he thought M.R. was guilty but the State failed to prove it. 
Juror Five told the trial court that he could hold the State to its burden of
proof and that, if this situation presented itself, he could look people in the
face and say that he thought M.R. was guilty but the State did not prove it.

Juror
Five never expressed prejudice directed at M.R., and the trial court did not
abuse its discretion when it determined that Juror Five was not biased against
the law.  There was sufficient uncertainty in counsel’s original question and
Juror Five’s response that the trial court did not err when it asked Juror Five
additional questions.  Juror Five’s concern with drugs in school does not
disqualify him from sitting on the jury because veniremembers cannot be
challenged for cause for having a bias against the crime committed.  Wilson
v. State, 436 S.W.2d 542, 544 (Tex. Crim. App. 1968); Phillips v. State,
656 S.W.2d 219, 220-21 (Tex. App.—Fort Worth 1983, no pet.).  After considering
the voir dire of Juror Five in its entirety, we cannot conclude that it
established that he was biased as a matter of law.  

B.
Juror Three.

M.R.
also complains that the trial court improperly rehabilitated Juror Three and points
to the following exchange to show that she was biased as a matter of law: 

            Q: 
Knowing your child is going to filter back into a high school and potentially Midland
High where the accusations are made here, would you feel comfortable telling
all your child’s friends that you sat on a jury and that you thought that this
person was probably guilty, but the State just didn’t do their job?

 

            A: 
Well, I do have just a slight problem.  Because I would feel horrible if he was
guilty -- if in my mind that there was more towards the guilt.

 

            . . . .

 

            Q:
If they -- what happens if the State doesn’t prove it beyond a reasonable doubt?

 

            A:
Well, I would have to find him not guilty.

 

            Q:
Would you be comfortable doing that?

 

            A:
Not if I really felt like he was guilty. 

 

Although she
expressed discomfort, Juror Three did not state that she could not or would not
follow the law.  When questioned outside the panel’s presence, Juror Three
affirmed that she would require the State to prove its case, that she would not
let her feelings affect her decision, and that she could set aside the
consequences of her decision and base it solely on the evidence.  The trial
court did not abuse its discretion by determining that Juror Three was not
biased as a matter of law and did not improperly rehabilitate Jurors Three or
Five.  Issue One is overruled.      

IV. Motion
to Suppress 

            M.R.
filed a motion to suppress any statements or tangible evidence obtained from
him. The trial court granted that motion in part and suppressed any statements
made by M.R. to school officials.  The State filed a motion to reconsider.  The
trial court heard the State’s motion prior to the start of voir dire and then reversed
its decision to suppress M.R.’s statement. M.R. challenges this decision.

A
trial court may reconsider its decision on a motion to suppress evidence and,
absent an abuse of discretion, may deny the motion after originally granting
it.  Montalvo v. State, 846 S.W.2d 133, 137-38 (Tex. App.—Austin 1993,
no pet.).  We give almost total deference to the court’s determination of
historical facts and “mixed questions of law and fact” that apply the law to
the case’s specific facts and turn on an evaluation of witness credibility and
demeanor.  In re L.M., 993 S.W.2d 276, 286 (Tex. App.—Austin 1999, pet.
denied).  We review de novo questions of law and mixed questions that do
not turn on such an evaluation.  Id.  

M.R.
contends that he was subjected to a custodial interrogation while in Principal Herrera’s
office and that, because he was not advised of his rights, his statement to
Principal Herrera was inadmissible. Custodial interrogation is questioning
initiated by law enforcement after a person has been taken into custody or
otherwise deprived of his freedom in any significant way.  Stansbury v.
California, 511 U.S. 318, 322 (1994).  A child is in custody if, under the
objective circumstances, a reasonable child of the same age would believe his
freedom of movement was significantly restricted.  Jeffley v. State, 38
S.W.3d 847, 855 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d); see In re
D.J.C., No. 01-07-01092-CV, 2009 WL 3050870, *4-5 (Tex. App.—Houston [1st
Dist.] Sept. 24, 2009, no pet.) (describing the factors to consider when
determining whether a juvenile is in custody).

            Whether
M.R. was in custody we need not determine because the safeguards attendant to
custodial interrogation do not come into play unless the person to whom the
statements are made is acting as an agent of the police.  Paez v. State, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984).  Questioning of
a student by a principal, whose duties include the obligation to maintain
order, to protect the health and safety of pupils, and to maintain conditions
conducive to learning, cannot be automatically equated with custodial
interrogation by law enforcement officers.  See In re V.P.,
55 S.W.3d 25, 32 (Tex. App.—Austin 2001, pet. denied) (school officials act as
a representative of the State when searching students or carrying out disciplinary
actions, but this does not equate them with law enforcement officials).  We must look to the totality
of the circumstances to determine whether Principal Herrera was acting under
his duties as a school administrator or whether he was questioning M.R. as an
agent of the police.  

Although Officer Casbeer
directed Assistant Principal Herrera to keep M.R. in his office until he
returned, Principal Herrera questioned M.R. without Officer Casbeer’s direction. 
There is no indication that the officer coerced, dominated, or controlled Principal
Herrera’s inquiry in any way.  Under these circumstances,
Principal Herrera was not an agent of the police, and M.R.’s voluntary
admissions were not the result of a custodial interrogation.  Cf. In re V.P.,
55 S.W.3d at 33 (assistant principal was conducting a school investigation not
a criminal investigation when he questioned a student about a gun on campus).

            Even
if we are in error and M.R.’s statement to Principal Herrera was made during a
custodial interrogation, the trial court’s ruling did not cause M.R.
constitutional harm.  A constitutional error is one that directly offends the
United States Constitution or the Texas Constitution.  See Fox v. State,
115 S.W.3d 550, 563 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  The
critical inquiry is whether the error may have contributed to M.R.’s conviction
or punishment.  See Chapman v. California, 386 U.S. 18 (1967).  

            M.R.’s
statement did not contribute to his conviction.  Officer Casbeer found cocaine
on M.R., and M.R. was convicted of possession.  M.R.’s confession to Principal
Herrera gave weight to the State’s charge that M.R. intended to deliver the
cocaine – a charge the jury found was not true.  Thus, the admission of M.R.’s
statement did not affect the outcome of the case.  Issue Three is overruled. 

V. Motion
for Continuance

M.R.
next contends that the trial court erred by denying his motion for
continuance.  When the trial court reversed its ruling on the motion to
suppress, M.R.’s counsel orally requested a continuance, arguing that he had
received the State’s motion for reconsideration only a few days earlier and
that he had prepared his case under the assumption that M.R.’s statement to the
principal had been suppressed.  The trial court denied this request and
proceeded with the trial.

            The
State argues that this issue has not been preserved because the motion was not
in writing or sworn.  We agree.  Oral motions for continuance preserve nothing
for review.  Tex. Code Crim. Proc. Ann.
art. 29.03 (Vernon 2006); Williams v. State, 196 S.W.3d 365, 367 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d).  Moreover, even if we assume that error was preserved, M.R. is not entitled to
relief.

M.R.
has shown no harm resulted from the denial of his motion for continuance.  As
noted above, the trial court’s reconsideration of the motion to suppress
interjected a confession to selling drugs that would have otherwise been
inadmissible.  But even after hearing this evidence, the jury found the
allegations that M.R. intended to deliver the cocaine were not true.  The jury
did not need M.R.’s statement to find him guilty of possession because it had Officer
Casbeer’s testimony that he found cocaine on M.R.’s person.  The trial court’s
revised suppression ruling did not affect the trial result; therefore,
additional preparation time would not have benefitted M.R.  M.R.’s second issue
is overruled.

VI. Texas
Youth Commission Placement

            M.R. also challenges the trial court’s decision to forego a
less restrictive placement and commit him to the Texas Youth Commission (TYC). 
Following adjudication, a juvenile court has broad discretion to determine
disposition.  In re C.J.H., 79 S.W.3d 698, 702 (Tex. App.—Fort Worth
2002, no pet.).  The trial court abuses its discretion if it acts without
reference to any guiding rules or principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  Under an abuse of
discretion standard, legal and factual sufficiency are relevant factors in
assessing whether the trial court abused its discretion.  In re C.G.,
162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.).

            In
reviewing the legal and factual sufficiency of a disposition order in a
juvenile case, a civil standard of review is employed.  In re T.E.G.,
222 S.W.3d 677, 678 (Tex. App.—Eastland 2007, no pet.).  In a legal sufficiency
analysis, the evidence to support the court’s findings are considered in the
light most favorable to the findings, and all reasonable inferences are
indulged.  Id. at 679.  We recognize that the trier of fact is the sole
judge of the witnesses’ credibility and the weight to be given their testimony
and that we cannot substitute our judgment for that of the trier of fact so
long as the evidence falls within the zone of reasonable disagreement.  Id. 
Also, in reviewing for abuse of discretion with respect to factual sufficiency,
we consider all of the evidence and set aside a juvenile court’s disposition
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Id.

            No
disposition placing a child outside its home may be made unless the trial court
finds and includes in its disposition order that the removal was in the child’s
best interest, that reasonable efforts were made to eliminate the need for
removal, and that the child cannot be provided the quality of care and level of
support and supervision in its home necessary to meet the conditions of
probation.  Tex. Fam. Code
Ann. § 54.04 (Vernon Supp. 2009). At the disposition hearing, a court
may consider reports from probation officers in addition to the testimony of
witnesses.  Section 54.04(b).

            The
trial court did not abuse its discretion when it committed M.R. to TYC.  M.R. correctly
notes that the probation department’s original recommendation was for one year
delinquent probation in his parent’s home.  M.R. argues that the admitted
evidence supports this recommendation and that nothing was admitted to indicate
its inappropriateness.  However, Juvenile Probation Officer Charles E. Chapman
testified that the probation recommendation was the result of an oversight.  His
testimony was offered during a hearing on a petition for delinquency trial.  Chapman
testified that the recommendation was based upon a third degree felony referral
instead of a first degree felony.  The trial court rejected the probation department’s
recommendation, and M.R.’s case proceeded to trial because the court believed
that a one year probated sentence did not match the seriousness of the offense.

            During
the punishment phase of trial, the probation department recommended TYC
placement.  The probation department took into consideration M.R.’s age.  M.R.
was only six months away from turning seventeen.  TYC placement ensured that he
could be supervised until his nineteenth birthday.  Chapman also testified that
M.R.’s rehabilitation would be best served by TYC because it is a long-term facility
that can provide around-the-clock supervision by in-house professionals. 
Chapman testified that he had reservations about placing M.R. in a short-term
facility, recalling his personal work history with M.R. on a deferred
prosecution for possession of marihuana.  Chapman noted that, during this time,
M.R. did not attend drug counseling regularly and was having difficulties in
school.

            M.R.
claims that the undisputed testimony established that there was suitable
monitoring and supervision at home to prevent him from perpetrating more
criminal acts.  But the record contradicts this assertion.  M.R.’s parents work
long hours, and M.R. commonly did not have any supervision after school until
seven in the evening.  Even though M.R. had previously been charged with
possession of marihuana, M.R.’s father, when asked if M.R. had a problem, could
not say because he did not know what the State considered a drug problem.  When
the State asked the father if M.R. needed counseling, he did not say it was
necessary but thought that it would help.  Although M.R.’s father claims that
family and friends were available for support, the trial court could disbelieve
this testimony and determine that M.R.’s supervision would be insufficient.    

            The trial
court did not abuse its discretion by concluding that a less restrictive
placement was not an appropriate alternative for M.R. and that the juvenile
probation department had made reasonable efforts to prevent the need to remove
M.R. from his home.  We overrule M.R.’s fourth issue.

VII.
Sufficiency of the Evidence

            M.R.’s
concluding argument is that his conviction is supported by legally and
factually insufficient evidence.  M.R. bases his argument on the premise that
the record, absent the improperly admitted statements and evidence, is
insufficient to support his conviction.  M.R.’s argument fails because we have
held that the trial court did not err by denying the motion to suppress. 
Moreover, even if we exclude consideration of M.R.’s statement to Principal
Herrera, Officer Casbeer testified that he found cocaine inside a beef jerky
can handed to him by M.R.  This alone is factually and legally sufficient to
support M.R.’s conviction of possession.  M.R.’s final issue is overruled.

VIII.
Conclusion

            The
judgment of the trial court is affirmed.

            

 

RICK STRANGE

 

                                                                                    JUSTICE

May 13, 2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]District Alternative Education Program.